UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EUGENE HUNTER, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | 1:24-cv-01069-SEB-KMB |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| *Respondent*. | ) | |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

Eugene Hunter has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Filing No. 2.] He challenges a prison disciplinary proceeding in which he was found guilty of Offense B-204, sexual contact, and sanctioned with a 30-day loss of good-time credits, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 10-6.] For the reasons explained below, the disciplinary proceeding did not violate Mr. Hunter's due process rights and his habeas petition is **DENIED**.

### I.
### LEGAL BACKGROUND

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the

disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
### FACTUAL BACKGROUND

On July 17, 2023, Investigator H. Kern wrote a Conduct Report in which she stated:

> On 7/17/2023 at approximately 1:04PM I Investigator H. Kern was supervising visits in the visiting room. Upon supervising visits in the visiting room I was informed that Offender Eugene Hunter #179720 hand made physical contact with the visitor he was visiting at the end of his visit on her buttocks. Per Policy 02-04-101 Sexual Contact is defined as contact between persons that includes touching of the intimate parts of one person to any part of another person, whether clothed or unclothed; clutching, exposing, fondling or touching one's intimate parts for the sexual arousal of themselves or others, whether clothed or unclothed while observable by others. Intimate Parts include: Breasts, penis, buttocks, scrotum, or vaginal area or any other part of the body that may result in sexual arousal or gratification for either party. Offenders are only allowed to shake hands and/or embrace at end of the visit, kissing and inappropriate touching is strictly prohibited.

[Filing No. 10-1.]

Mr. Hunter was notified of the charge on July 19, 2023 when he received a copy of the Conduct Report and the Screening Report. [Filing No. 10-1; Filing No. 10-2.] He pled not guilty to the offense and requested a lay advocate, but did not request any witnesses or physical evidence when he completed the Screening Report. [Filing No. 10-2.] The same day, however, Mr. Hunter completed a Request for Interview Form in which he stated:

> I was screened by you. I want to request the video footage of this alleged incident/act and or any physical evidence in regard to case no. CIC-23-07-001069. I am in need of this evidence so I can prepare my defense for my upcoming DHB Hearing. Thank you. Will you send me a document writing down the requested video footage evidence and physical evidence of incident please stamp filed. Thank you.

[Filing No. 10-5.]

2

On August 17, 2023, Sgt. J. Pardue completed a Video Evidence Review Form in which he stated: "I Sgt. J. Pardue reviewed video footage for CIC 23-07-001069. During the video review offender Hunter #179720 can be seen grabbing his visitor[']s buttocks two separate times at the end of his visit." [Filing No. 10-7.]

After two postponements of the hearing due to "case load," [Filing No. 10-4], a hearing was held on August 29, 2023, [Filing No. 10-6]. Mr. Hunter appeared at the hearing, pled not guilty, and provided the following statement:

> I've never had a visit here before. I didn't know that I couldn't do that. I know I am not allowed to kiss because that was told to me, so I didn't kiss her. If I had known it was a rule it would have been different. I have a lot I am going through right now. I have DCS stuff I am going through right now. I really think this should be a C conduct.

[Filing No. 10-6 at 1.] The disciplinary hearing officer ("DHO") considered photos of the visitation room, the Conduct Report, Mr. Hunter's statement, and video evidence. [Filing No. 10-6.] The DHO concluded that Mr. Hunter was guilty of Offense B-204, Sexual Contact, writing: "I relied on video that shows Hunter grabbing his visitor['s] buttocks two times. Policy was reviewed and this does constitute a B204 Sexual Contact." [Filing No. 10-6.] Mr. Hunter was sanctioned with a 30-day loss of good-time credits, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 10-6.]

Mr. Hunter appealed to the Facility Head and the IDOC Final Reviewing Authority, and both appeals were denied. [Filing No. 10-8; Filing No. 10-9.] He then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Filing No. 2.]

3

## III.
### ANALYSIS

Mr. Hunter raises four grounds in his Petition: (1) that the DHO was not impartial; (2) that his request for the name of the staff member who reported the incident to Investigator Kern and for the description of the incident given to Investigator Kern were improperly denied; (3) that the Conduct Report does not contain sufficient detail to provide him with adequate notice of the charges; and (4) that the evidence was not sufficient to support a finding of guilt. [Filing No. 2 at 2-5.] The Respondent argues that Mr. Hunter failed to exhaust his administrative remedies as to several of his claims. [Filing No. 10 at 6-9.] The Court first addresses the exhaustion issue before turning to Mr. Hunter's claims.

### A. Failure to Exhaust

The Respondent contends that Mr. Hunter did not exhaust his administrative remedies regarding his claims that he was denied an impartial decisionmaker, that he was denied evidence and witnesses, and that insufficient evidence supported the charge. [Filing No. 10 at 7.] The Respondent asserts that Mr. Hunter only raised an issue with a lack of detail in the Conduct Report on appeal. [Filing No. 10 at 8.] It contends that Mr. Hunter has procedurally defaulted on his remaining claims. [Filing No. 10 at 9.]

Mr. Hunter did not file a reply, but asserts in his Petition that he did not present the grounds raised in his Petition on appeal because "this facility lost all my legal mail and property when I was moved to another dorm." [Filing No. 2 at 3-6.]

It is well established that state prisoners must exhaust their available state remedies before challenging a prison disciplinary conviction in federal court. *See Love v. Vanihel*, 73 F.4th 439, 446 (7th Cir. 2023) (citing 28 U.S.C. § 2254(b)(1)(A), (C)). To properly exhaust a claim and

4

"avoid procedural default, a habeas petitioner must 'fairly present' a claim to each level of the state courts." *Love*, 73 F.4th at 446. Indiana "has no judicial procedure for reviewing prison disciplinary hearings, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies, and presenting legal contentions to each administrative level." *Id.* (quotations and citations omitted).

A petitioner seeking review of defaulted claims has two options. He can show "cause and prejudice for the default" or he can demonstrate that failure to consider the defaulted claims will result in a "miscarriage of justice." *Id.* "The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded compliance with the procedural rule." *Id.* (quotation and citation omitted). "This normally means petitioner must show that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance impracticable." *Id.* (quotations, citations, and alteration omitted).

To show prejudice, "the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Id.* at 448 (quotation and citation omitted). To demonstrate a fundamental miscarriage of justice, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" such that "it is more likely than not that no reasonable juror would have convicted [the petitioner] in the light of the new evidence." *Thomas v. Williams*, 822 F.3d 378, 386 (7th Cir. 2016).

Mr. Hunter did not raise issues in his appeal regarding being denied an impartial decisionmaker, being denied evidence and witnesses, or that there was insufficient evidence

5

supporting the charge. [Filing No. 10-8.] Indeed, he has admitted that he did not raise those issues in his appeal, but he attempts to show cause for not doing so by asserting that his legal mail and property was lost when he moved to another dorm. [Filing No. 2 at 3-5.] Although it is not clear how losing legal mail or property affected Mr. Hunter's ability to raise all of his arguments on appeal – especially since he did, in fact, file an appeal – the Court assumes without deciding that Mr. Hunter has shown cause for failing to raise all of his arguments on appeal and discusses the merits of his arguments in turn.

### B. Denial of Impartial Decisionmaker

Mr. Hunter argues that he was denied the right to an impartial decisionmaker because the DHO "refused to hear anything [he] had to say during his DHB hearing." [Filing No. 2 at 2.] He asserts that the DHO "knew that the conduct report was incorrectly written" and "denied [his] request to have this unknown ofc. who reported the incident to [Investigator] Kern brought forward," and that the DHO found him guilty "for his own personal reasoning." [Filing No. 2 at 2-3.]

The Respondent argues that Mr. Hunter was provided with an impartial decisionmaker and that "[t]here is no evidence that the DHO was involved in the conduct leading to [Mr.] Hunter's charge or that some other factor outside the disciplinary hearing process would call into question the DHO's impartiality." [Filing No. 10 at 10.] The Respondent contends that Mr. Hunter's arguments regarding the DHO's refusal to identify the officer who reported the incident to Investigator Kern or to dismiss the Conduct Report because it was insufficient "do not call into question the honesty and integrity of the DHO." [Filing No. 10 at 10.] The Respondent notes that the Hearing Report shows that the DHO considered Mr. Hunter's statement, that the DHO was not

6

required to believe Mr. Hunter's statement, that there is no evidence the Conduct Report was written incorrectly, and that Mr. Hunter never requested the evidence he now argues he was denied. [Filing No. 10 at 10-11.]

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Hunter has not presented any evidence that the DHO was directly or substantially involved in the factual events underlying the disciplinary charge or the investigation. The Hearing Report reflects that the DHO considered Mr. Hunter's statement, so his claim that the DHO would not listen to him is without merit. The Court discusses Mr. Hunter's arguments regarding the sufficiency of the Conduct Report and his request for the identity of the reporting staff member and the corresponding report below, but notes that neither argument reflects that the DHO was impartial in some way. In short, Mr. Hunter has not shown that the DHO was involved in the

factual events underlying the disciplinary charges or the investigation and, consequently, has not shown that he was denied an impartial decisionmaker.

Mr. Hunter's argument that the DHO was not impartial does not provide a basis for habeas relief.

### C. Denial of Witness and Evidence

Mr. Hunter argues in support of his Petition that he requested the name of the staff member who reported the incident to Investigator Kern and also requested the incident report that the staff member provided, but that his requests were denied at his Screening Hearing and by the DHO at his Disciplinary Hearing. [Filing No. 2 at 2.] He argues that he needed this information to show that the Conduct Report was "incorrectly written." [Filing No. 2 at 2.] Mr. Hunter asserts that because he was not given the name of the staff member and the report the staff member provided to Investigator Kern, he "was denied the right to put up a defense to this incorrectly written conduct report." [Filing No. 2 at 3.]

The Respondent argues that Mr. Hunter was provided with a copy of the Conduct Report, that there is no separate incident report from the reporting staff member, and that "[e]ven if there was an incident report, it likely would have had the same description of the incident listed in the conduct report so it is hard to see how [Mr.] Hunter would have been harmed by not being provided the incident report." [Filing No. 10 at 12.] The Respondent also notes that Mr. Hunter did not request any witnesses and that "the identity of the reporting staff who told Investigator Kern about [Mr.] Hunter's conduct is irrelevant and/or repetitive of evidence already in the record" because the video and photographs show Mr. Hunter grab the buttocks of the female visitor and the reporting staff member's testimony "would have likely been cumulative of what was included in

8

the conduct report and shown on the video." [Filing No. 10 at 13.] The Respondent asserts that to the extent Mr. Hunter wanted the reporting staff member to testify that he did not give Mr. Hunter a warning, that is irrelevant to a finding of guilt. [Filing No. 10 at 14.]

Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). When prison administrators believe a valid justification exists to withhold evidence, "'due process requires that the district court conduct an in camera review' to assess whether the undisclosed [evidence] is exculpatory." *Johnson v. Brown*, 681 F. App'x 494, 497 (7th Cir. 2017) (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)).

The Screening Report reflects that Mr. Hunter did not request any witnesses, including the name of the staff member who reported the incident to Investigator Kern. [*See* Filing No. 10-2; Filing No. 10-11 (DHO stating in a Declaration that "[a]fter being informed of the charge, [Mr.] Hunter did not request the name of the staff member who reported the incident to Investigator Kern or request this person as a witness, so prison officials did not provide that information to him").]

Additionally, Mr. Hunter did not request any physical evidence – including any incident report provided by the staff member who observed the incident – other than the video evidence he

9

requested in the Request for Interview Form. [*See* Filing No. 10-2; Filing No. 10-5.] And in any event, the DHO stated in his Declaration that "[n]o separate incident report apart from the conduct report was submitted in this case." [Filing No. 10-11.] It is well-settled that "prison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). Additionally, to the extent that Mr. Hunter is claiming that the reporting staff member's testimony would have been exculpatory, Mr. Hunter does not explain how testimony from the reporting staff member would have changed the outcome of the disciplinary proceeding.

Mr. Hunter's argument that his requests for the identity of the staff member who reported the incident and the incident report provided by that staff member were denied does not provide a basis for habeas relief.

### D. Sufficiency of Conduct Report

Mr. Hunter argues in support of his Petition that the Conduct Report does not provide the "who, what, when, where or how this sexual contact occur[ed]." [Filing No. 2 at 2.] He also asserts that the Conduct Report does not "list the [officer's] name who reported this illegal act to [Investigator] Kern." [Filing No. 2 at 2.] Further, he argues that "[s]ince [Investigator] Kern didn't witness this act the report she written should have stated what this unknown [officer] witness[ed] (factual event) because [Investigator] Kern didn't witness or see with her own eyes." [Filing No. 2 at 4.]

The Respondent argues that Mr. Hunter had sufficient notice of the charge because he received notice on July 19, 2023 and the Conduct Report informed Mr. Hunter that he was being charged with offense B-204, provided the date of the offense, stated that Mr. Hunter touched his

visitor's buttocks, and provided the Indiana Department of Correction ("IDOC") definition of "sexual contact." [Filing No. 10 at 14-15.] The Respondent notes that the hearing did not occur until a month later, and that Mr. Hunter had time to prepare a defense. [Filing No. 10 at 15.] The Respondent acknowledges that the Conduct Report did not provide the visitor's name, but asserts that it "provided enough detail to help [Mr. Hunter] marshal a defense." [Filing No. 10 at 15-16.]

Due process requires that an inmate be given advanced "written notice of the charges ... in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003); *see Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995).

To the extent Mr. Hunter challenges the adequacy of his advance written notice, the Court observes that the Conduct Report included the date and time of the incident and what the incident entailed (Mr. Hunter touching his visitor's buttocks). [Filing No. 10-1.] The fact that the Conduct Report did not provide the name of the visitor is irrelevant given that Mr. Hunter participated in the visit so would have that knowledge once he was informed of the date and time of the visit through the Conduct Report. Mr. Hunter's argument that the Conduct Report did not provide the "who, what, when, where, or how" is meritless.

The Court has already addressed Mr. Hunter's argument that he was not provided with the name of the staff member who reported the incident to Investigator Kern, and has found that Mr. Hunter did not request the reporting staff member as a witness and that he has not shown that the reporting staff member's testimony would have been exculpatory. Additionally, the Court finds that the failure to include the reporting staff member's name in the Conduct Report was not relevant

11

to Mr. Hunter's ability to prepare a defense to the charge. The Court further notes that Mr. Hunter received notice of the charge on July 19, 2023 and that the hearing did not take place until August 29, 2023, giving Mr. Hunter ample time to request witnesses or physical evidence other than the video – which he did not do – and to prepare his defense.

The Court finds that the Conduct Report sufficiently apprised Mr. Hunter of the charge against him and that this ground does not provide a basis for habeas relief.

**E. Sufficiency of the Evidence**

Mr. Hunter argues that there was not sufficient evidence to find him guilty, asserting that the video does not show staff giving him a warning that he could not touch his visitor's buttocks and that the Conduct Report does not state that Investigator Kern saw Mr. Hunter grab his visitor's buttocks. [Filing No. 2 at 2-5.]

The Respondent argues that some evidence supports the DHO's finding of guilt, including that the Conduct Report states that Mr. Hunter grabbed his visitor's buttocks and that the video evidence and photographs support the events detailed in the Conduct Report. [Filing No. 10 at 16-17.] The Respondent asserts that Mr. Hunter does not deny that he grabbed his visitor's buttocks, but instead argues that he was not given a warning, and that "a warning is not required prior to charging him with an offense." [Filing No. 10 at 18.]

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the

12

disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Under this standard, "courts 'are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quoting *Hill*, 472 U.S. at 454); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."); *Ping v. McBride*, 888 F. Supp. 917, 922 (7th Cir. 1993) (stating that in a prison disciplinary case, it is not the proper function of the court "to reweigh conflicting evidence and to make credibility determinations") (citing *Viens v. Daniels*, 871 F.2d 1328 (7th Cir. 1989)).

Here, the Conduct Report and the Video Evidence Review Form constitute sufficient evidence to conclude that Mr. Hunter violated the law. *McPherson*, 188 F.3d at 786 (Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision"). Mr. Hunter was charged with and found guilty of committing Offense B-204, which prohibits "[p]articipating in sexual contact as defined by Policy and Administrative Procedure 02-04-101, Section III, 'Definitions.'" [Filing No. 15.] The definition of "Sexual Conduct" includes "[t]ouching of the intimate parts of one person to any part of another person, whether clothed or unclothed." [Filing No. 10-10 at 7.] "Intimate parts" include "buttocks." [Filing No. 10-10 at 5.]

Investigator Kern wrote in the Conduct Report that she was informed that Mr. Hunter "made physical contact" with his visitor "on her buttocks." [Filing No. 10-1 at 1.] Further, the

13

Video Evidence Review Form reflects that Sgt. Pardue reviewed the video and that Mr. Hunter "can be seen grabbing his visitor[']s buttocks two separate times at the end of his visit." [Filing No. 10-7 at 1.] The Respondent filed the video along with still photographs from the video on an ex parte basis, and the Court has reviewed them. Both are consistent with the Video Evidence Review Form and clearly show Mr. Hunter grabbing his visitor's buttocks. Both the Conduct Report and the video of the incident constitute some evidence that Mr. Hunter committed Offense B-204.

Mr. Hunter's arguments to the contrary are meritless. He argues that he was not given a warning after grabbing his visitor's buttocks the first time, but this just reaffirms that he did, in fact, grab his visitor's buttocks. And there is no rule or policy entitling him to a warning before being charged with committing an offense. He also argues that Investigator Kern did not see Mr. Hunter grab his visitor's buttocks himself, but no such first-hand knowledge by Investigator Kern is required. And, in any event, the video indisputably shows that Mr. Hunter committed Offense B-204.

In short, some evidence supported the DHO's finding of guilt and Mr. Hunter's arguments to the contrary do not provide a basis for relief.

## IV.
### CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Hunter to the relief he seeks.

Accordingly, Mr. Hunter's Petition for a Writ of Habeas Corpus, [2], is **DENIED** and the action **DISMISSED**. Judgment consistent with this Order shall now issue.

Date: 12/19/2024

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Eugene Hunter
#179720
Pendleton Correctional Facility
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, IN 46064